**UNITED STATES of America**

v.

**Edward RUCKER, Jr., Appellant.**

**No. 71–1690.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1972.

Decided June 23, 1972.

Mr. Steven K. Yablonski, Washington, D. C. (appointed by this court) for appellant.

Mr. Harry J. McCarthy, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. Harold H. Titus, Jr., U. S. Atty., also entered an appearance for appellee.

Before WRIGHT and McGOWAN, Circuit Judges, and FRANK A. KAUFMAN,* U. S. District Judge for the District of Maryland.

McGOWAN, Circuit Judge:

The sole issue raised on this appeal is whether appellant's armed robbery conviction must be reversed, and the indictment dismissed, because of a delay of nearly eighteen months between his arrest and trial.

Appellant was, on September 1, 1969, arrested shortly after the alleged offense.[1] Unable to pay the premium on a $1000 bail bond, he was incarcerated. On November 20, 1969, he pled guilty to two unrelated offenses, and, on December 19, was sentenced to consecutive terms of one year each. Although appellant's trial counsel had indicated on December 4, 1969, that he could be ready for trial in about three weeks, there was no movement in his case until January 29, 1971—nearly 14 months later—when trial was set for February 22, 1971.[2] In the interim, appellant's trial counsel sent two letters concerning the delay (dated September 22 and December 7, 1970) to the trial judge. In addition, appellant filed, on October 30, 1970, a motion to dismiss for want of a speedy trial.[3] That motion was denied on the day of trial, the judge stating that "[t]his case was not tried any earlier because this defendant had been tried and convicted and was incarcerated in an institution by virtue of a prior conviction, and the Court felt that there was no urgency about the trial of this case when the Court had to consider the other trials pending in the Court."

---

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1970).

1. "It is the consistent practice in this jurisdiction to compute the length of delay from the date of *arrest* rather than from some later stage in the proceedings." Coleman v. United States, 142 U.S.App.D.C. 402, 442 F.2d 150, 153 (1971).

2. The only court proceeding during 1970 occurred on April 15, when a motion to suppress certain evidence was withdrawn by the defense.

3. The trial judge did not reply to the letters, nor did the Assistant United States Attorney respond to the motion to dismiss.

## I

A delay of over one year between arrest and trial raises a Sixth Amendment claim of "prima facie merit." Hedgepeth v. United States, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966). It places on the Government the necessity of justification, the burden of which increases with the length of the delay. *Id.* at 687. When the delay approaches a year and a half, as in this case, the Government must provide a justification which convincingly outweighs the prejudice which can normally be assumed to have been caused the defendant.

In attempting to justify the delay in this case, the Government points only to the fact that, beginning on December 19, 1969, appellant was serving time for unrelated offenses, and argues that "[i]n view of the substantial number of incarcerated defendants who daily await trial in this jurisdiction because of their inability to make bond, the trial court acted reasonably in placing a lower priority upon appellant's case." The prejudice to defendants who are in prison for unrelated crimes, so the Government assumes, is outweighed by the desirability of quick dispositions for defendants who, if acquitted of the pending charge, will be freed.

The point is not without plausibility, certainly if it be assumed that the constitutional right to a speedy trial may, in these days of staggering increases in criminal indictments, be accommodated to the reality of a failure by the legislative branch to provide adequate judicial resources. But, whatever may be the merits of this approach, it cannot be decisive in this case. There is no indication in the record that the trial judge in fact consciously tolerated delay in the prosecution of appellant solely to expedite the trials of defendants who were incarcerated because they could not make bond. In fact, District Court records filed in this court show that the judge to whom appellant's case had been assigned was, for substantial portions of several months in 1970, engaged in a complex and burdensome narcotics conspiracy trial of multiple defendants, all of whom were released on bail. United States v. Tantillo, Nos. 71–1192 and 71–1193.

In light of that fact, the Government can hardly prevail in this instance on the theory that appellant's interests were outweighed by those of other incarcerated defendants. If the conviction is to be affirmed, rather, it must be on the ground that appellant was not significantly prejudiced by the delay in bringing his case to trial. Considering the circumstances in light of Supreme Court precedent, we conclude that there is present here a "reasonable possibility of significant prejudice." United States v. Holt, 145 U.S.App.D.C. 185, 448 F.2d 1108 (1971), cert. denied, 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 256 (1971).

In Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1968), the Supreme Court stated that "[a]t first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from 'undue and oppressive incarceration prior to trial.' But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge." *Id.* at 378, 89 S.Ct. at 577. Specifically, the Court noted four types of prejudice which such a defendant might suffer:

1. "First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." *Id.*

2. "Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him." *Id.*

3. "And while it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large." *Id.* at 379, 89 S.Ct. at 577.

4. "Finally, it is self-evident that 'the possibilities that long delay will impair the ability of an accused to defend himself' are markedly increased when the accused is incarcerated. . . . [W]hile 'evidence and witnesses disappear, memories fade, and events lose their perspective,' a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time." *Id.* at 379–389, 89 S. Ct. at 578 (footnote omitted).

Concerning the last of these types of prejudice, namely, impairment of the ability of the accused to present a defense, the Government contends that the evidence against appellant was so strong as to negate such a claim. In view of the fact that appellant does not allege that his defense was prejudiced, we discount that possibility, although we note that the fact that evidence *at trial* is one-sided does not necessarily bar such a claim. Seemingly overwhelming evidence of guilt can on occasion result from impairment of the defense capacity by reason of delay.

Regarding the second type of prejudice noted in Smith v. Hooey, appellant offers to prove that the pending charge diminished his ability to make parole, and also rendered him ineligible to participate in a rehabilitation program at Lorton Reformatory. Although those claims clearly are cognizable to show detriment from a Sixth Amendment violation, it would require a remand to establish their validity. Inasmuch as we find prejudice of another type, sufficient to require reversal in itself, we perceive no need to pursue the matter further.

The record suggests prejudice of the type noted first in Smith v. Hooey, *i. e.,* the delay in bringing appellant's case to trial may well have cost him the opportunity to serve most of his sentence for the present offense concurrently with the sentences imposed on December 19, 1969. As noted in his reply brief, appellant finished serving these earlier terms in June, 1971. Thus, if his trial for the present offense had been held within a reasonably short time after his arrest on September 1, 1969, the two-year sentence imposed upon him—the statutory minimum—would have substantially overlapped with the earlier ones; only a few months would have remained after June, 1971. As it was, he was not sentenced until April 22, 1971, allowing for an overlap of less than two months.

This analysis, of course, rests on the assumption that the trial judge would not have sentenced appellant differently if the trial had been held earlier, *i. e.,* he would not have imposed a minimum term greater than the mandatory two years or have made the sentence run consecutively with the earlier ones. On the record before us, that assumption seems sound. The sentencing transcript shows that the judge initially attempted to give appellant a lenient indeterminate sentence under 18 U.S.C. § 4208, and imposed the mandatory two-year minimum only after he remembered that appellant had been convicted of a District of Columbia Code crime. Given that fact, which indicates that the judge believed that appellant had been making progress toward rehabilitation, there is at least a "reasonable possibility" that appellant would not have been sentenced more harshly if the trial had been promptly held. No greater degree of certainty is required.[4] United States v. Holt, *supra.*

4. Moreover, even if it be assumed that all of appellant's progress toward rehabilita-
tion occurred in 1970 (so that his presentence report would have been unfavor-

■ We conclude, in sum, that appellant was significantly prejudiced by the eighteen month delay in bringing his case to trial.[5] The Government having failed to present a convincing justification for the delay, the conviction must be reversed, and the case remanded to the District Court with directions to dismiss the indictment.

## II

The significance of this case, and of the disposition we make of it, resides in the need for coordination and flexibility in the administration of the individual calendar system employed by the District Court.[6] The trial judge cannot be blamed for attaching great urgency to the lengthy narcotics conspiracy trial over which he presided; and we have independent knowledge of his intense involvement in it for a long period of time and of the heavy burdens ably borne by him in that regard. Its complexity and public importance clearly overshadowed appellant's all too conventional and familiar robbery case. When a judge becomes preoccupied with a major proceeding, however, provision must be made to protect the rights of other defendants awaiting trial on his calendar. As Justice Blackmun wrote while a member of the Eighth Circuit:

> Where a multiple-judge court uses the individual calendar system, all judges must share responsibility for the prompt disposition of criminal cases, must employ a team approach to those cases, and, *when necessary, must reassign them in order that they may be tried according to the commands of the Sixth Amendment* and Criminal Rules 48(b) and 50. *If a judge is otherwise long committed in another case or is delayed in getting to the criminal cases on his calendar by reason of illness, personal misfortune or press of other business, this obviously does not serve to toll the enforcement of the right of a defendant awaiting trial on that judge's criminal calendar.* Hodges v. United States, 408 F.2d 543, 551–552 (8th Cir. 1969). (Emphasis added)

The conviction is reversed, and the case remanded to the District Court with directions to dismiss the indictment.

It is so ordered.

---

able after a trial in late 1969 or early 1970), and that the trial judge would have therefore imposed a minimum sentence of more than two years, that minimum could have been reduced to two years once appellant's progress became apparent. *See* 24 D.C.Code §§ 201c, 203(b).

5. In holding that the loss of the chance for substantially concurrent sentences constitutes reversible prejudice, we have not ignored the remaining type of prejudice noted in Smith v. Hooey, namely, the "anxiety and concern accompanying public accusation." While we agree that the prospect of receiving a prison term may be an even greater emotional burden when an accused has a present realization of the magnitude of the deprivation, we doubt whether that burden would be sufficient, in itself, to require dismissal of an indictment in a case, such as this one, in which there is no issue as to the defendant's guilt. When a guilty verdict appears inevitable, an accused's anxiety is presumably reduced, at least insofar as it stems from uncertainty about his future or from concern about community reaction to a false accusation.

6. The introduction of this calendaring method appears to have borne real fruit in enabling the District Court to move towards the goal of a prompt trial for every accused, in or out of jail; and the members of that court deserve great credit for their willingness to experiment with new ways of realizing our constitutional ideals. It is a willingness which could usefully be emulated at the appellate level. The result we reach in the case before us is in no way conceived of by us as a criticism of the individual calendaring system. It does, we think, indicate a need of perfecting it by a monitoring system which detects the need for reassignment in the situation where the attention of one judge is wholly preempted for a lengthy period of time.