**UNITED STATES of America, Appellee,**

v.

**Paul J. CHURCHILL, Defendant-Appellant.**

**No. 73–1098.**

United States Court of Appeals, First Circuit.

Heard June 5, 1973.

Decided Aug. 15, 1973.

charging him with aiding and abetting misapplication of funds of a Small Business Investment Company, aiding and abetting in the participation in those funds, and conspiring to misapply and participate in the funds. 18 U.S.C. § 657, 18 U.S.C. § 1006. Two co-defendants, McCullough and Chisholm, were also convicted. The essence of the fraudulent scheme was that funds from American Capital Corporation (Capital), whose principal officer and owner was McCullough, were unlawfully diverted to four corporations controlled by appellant, and found their way back to Capital and McCullough, for the latter's personal benefit.

While appellant lists in his brief eleven issues on appeal, he argues essentially three issues:

1.   Was the indictment a result of the government's improper use of civil proceedings to obtain evidence for a criminal prosecution?

2.   Did the delays in bringing the indictment and in bringing appellant to trial violate his rights to due process and a speedy trial?

3.   Did the failure of the government to introduce evidence to prove one step in a transaction illustrated for the jury on a chart require the grant of defendant's motion of a directed verdict as to one count and fatally prejudice his conviction on all other counts?

Philip G. Koenig, Boston, Mass., by appointment of the Court, for defendant-appellant.

Terry Philip Segal, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, and McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Appellant was convicted of eleven counts of a twelve-count indictment

I

Appellant's contention that the government deliberately used civil proceedings to prepare a criminal case against him raises a question which has come up more frequently as investigations by government agencies implicate criminal as well as civil liability. *Cf.* United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

Capital was a Small Business Investment Company regulated by the Small Business Investment Act of 1958, 15 U. S.C. § 661 et seq. McCullough bought

the company in 1965, and shortly thereafter, through the spring of 1966, he and the co-defendants allegedly committed the fraudulent transactions. In June, 1966, the Small Business Administration (SBA), having learned of possible violations of law by McCullough, began an investigation pursuant to authority conferred by § 687b. On the basis of this investigation, SBA officials suspected criminal violations as well as violations of its own regulations; it discussed the criminal aspects with the Justice Department and was told that, because of gaps in evidence, the case should not be referred for criminal prosecution.

The SBA in late 1966 initiated a civil action against Capital in the district court, alleging Capital's failure to meet, interest payments and to file periodic reports. *See* 15 U.S.C. § 687c. The court awarded the SBA a money judgment of $306,377.08, appointed it receiver of the corporation, and appointed SBA attorney O'Donnell attorney for the receiver. Meanwhile, the SBA continued to seek certain bank records that would help close gaps in the evidence.

In 1967, unknown to the SBA, one Shepard Spunt brought an involuntary petition in bankruptcy against McCullough. Informed of the proceeding, O'Donnell applied for and was granted permission to enter an appearance in the so-called 21(a) hearings. *See* 11 U.S.C. § 44(a). Though suspicious of criminal conduct, O'Donnell's purpose, he subsequently testified, was to discover where the money from Capital had gone and to collect it. He later filed a claim on behalf of the receiver against McCullough for $190,000.

McCullough and others, but not appellant, were subpoenaed and questioned at the 21(a) hearings by O'Donnell, Spunt, and the counsel for the trustee. They were not told that criminal conduct was

suspected, nor advised of their right to remain silent. In June, 1968, before the hearings were completed, but after testimony had been elicited closing many of the evidentiary gaps, the SBA referred the case to the United States Attorney, and the hearings were closed, at the SBA's request. Attempts to obtain bank records continued. Indictments came down on November 23, 1970, shortly before the statute of limitations was to expire.

In United States v. Kordel, *supra*, the Food and Drug Administration brought a civil action against the defendants and obtained discovery, and thereafter initiated a prosecution. In sustaining the convictions against arguments that the government's conduct was so unfair and wanting for justice as to violate due process and proper standards for administration of justice, the Court said, in dictum: "We do not deal here with a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution . . . ." 397 U.S. at 11–12, 90 S.Ct. at 769.

Appellant argues, focusing on the SBA's role in the 21(a) hearings, that this is such a case. The district court on appellant's motion to dismiss ruled otherwise. It said:

"The record is clear that the United States did not initiate or instigate the bankruptcy proceedings and that it did not use or abuse its civil investigatory powers by using the bankruptcy hearings as a ruse to obtain evidence for a criminal case. The record is clear that the Small Business Administration became a party to the bankruptcy proceeding in order to protect the Government's financial interests due to loans made by that agency."

■ We put aside the question of standing,[1] since we think that the dis-

---

1. Appellant was not questioned at the 21(a) hearings. Normally, one cannot vicariously assert the rights of others victimized by alleged governmental miscon-

duct. *See* Wong Sun v. United States, 371 U.S. 471, 491–492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725,

trict court was warranted in finding that the SBA's purpose was not improper. The SBA did not initiate the bankruptcy proceeding against McCullough. Its appearance and role in the 21(a) hearings were proper and perhaps mandatory, since as receiver it was charged with locating Capital's assets it believed McCullough had fraudulently taken from Capital. It is true, of course, that it was wearing two hats at the time, since it was simultaneously pursuing its investigation of Capital, which it suspected might uncover criminal conduct as well as civil violations. But we cannot conclude on the record before us that its *sole* purpose in intervening in the 21(a) hearings was to gather evidence for a criminal prosecution.

It is, of course, difficult in cases where the government pursues civil and criminal investigations jointly to determine what the government purpose is, if there is any single purpose. The problem arises recurrently in income tax investigations that may lead to criminal as well as civil liability. In *Donaldson, supra,* it was urged that an Internal Revenue summons proceeding could not be used to aid an investigation that could result in a recommendation of a criminal prosecution against the taxpayer. The Court held that the government's purpose was proper as long as the summons was used before the case was actually referred for prosecution. 400 U.S. at 533, 91 S.Ct. 534. In *Kordel,* too, the civil discovery, though occurring while the FDA contemplated initiating criminal proceedings, took place before the case was referred to the Justice Department for prosecution. *See* 397 U.S. at 4–6, 90 S.Ct. 763.

In *Donaldson,* the Court said that to prevent the IRS from pursuing joint investigations would "thwart and defeat the appropriate investigatory powers

that the Congress has placed in 'the Secretary or his delegate.' " 400 U.S. at 533, 91 S.Ct. at 544. Similarly here, to prevent the SBA from intervening in the 21(a) hearings would be to prevent it from carrying out its duties as receiver.[2] We have said that, with respect to income tax summonses, where the purpose is "mixed" it is "proper". McGarry v. Riley, 363 F.2d 421, 424 (1st Cir. 1966), cert. denied, 385 U.S. 969, 87 S.Ct. 502, 17 L.Ed.2d 433 (1966). The same proposition applies to the instant case. *But see* United States v. O'Connor, 118 F.Supp. 248 (D.Mass. 1953).

## II

Appellant contends that the pre- and post-indictment delays, and the combination of the two, violated his speedy trial and due process rights. We find merit in neither of his contentions.

■■ The Sixth Amendment speedy trial provision does not apply to the period before indictment, at least until the defendant is arrested. United States v. Marion, 404 U.S. 307, 321, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). *See* United States v. Cabral, 475 F.2d 715 (1st Cir. 1973). Appellant argues, however, that his due process rights were violated. relying on the Supreme Court's statement that

"the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain a tactical advantage over the accused." 404 U.S. at 324, 92 S. Ct. at 465 (footnote omitted).

But deciding that the government did not improperly use the 21(a) proceedings, we find neither that the government delayed in order to gain a tactical

---

4 L.Ed.2d 697 (1960) ; Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

2. *Donaldson,* concerning the scope of the authority for issuing summonses con-

ferred by 26 U.S.C. § 7602, is not strictly on point. However, we think the principles stated there are equally applicable here.

advantage nor that its use of the evidence from the 21(a) hearings was prejudicial. Indeed, it is clear from the record that the delay between the commission of the crime and the indictment was due to the lack of sufficient evidence to prosecute. The government can hardly be faulted for not bringing an indictment on insufficient evidence.

■ The period between indictment and trial was over 26 months. We recognize that this was an inordinate delay. *See* United States v. Butler, 426 F.2d 1275, 1277 (1st Cir. 1970). However, in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court held that the length of delay is only one of several factors to be weighed and balanced in determining whether the right to speedy trial has been denied. 407 U. S. at 530, 92 S.Ct. 2182. When we look to the other factors the Court mentioned, we conclude that the right has not been abridged.

■ First, the reasons for the delay. The appellant does not contend that the government deliberately delayed bringing him to trial. At most, it can be said that a crowded criminal docket and lack of judges may have contributed to the delay. This would be what the Court has described as "[a] more neutral reason [than deliberate government delay that] should be weighed less heavily but nevertheless should be considered . . . ." 407 U.S. at 531, 92 S.Ct. at 2192. Other factors, however, contributed to the delay, not the least of which were the defendant's discovery motions and the time necessary for response, and the fact that appellant had a change of counsel three months after the indictment. While the government's own discovery motions contributed to the delay, we cannot attribute it solely to the government's action or inaction. Indeed, on one occasion the government filed a motion to compel speedy filing of the defendant's pretrial motions brief.

■ Second, the defendant's responsibility to assert his right. In *Barker* the

Court said that failure to assert the right to a speedy trial does not constitute a waiver of the right. 407 U.S. at 528, 92 S.Ct. 2182. But it also said:

> "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 531–532, 92 S.Ct. at 2193.

The defendant did not assert his right until almost two years after the indictment was returned, and the case was tried three months afterwards. As late as nine months after the indictment was returned, appellant stated in a memorandum: "Defendant and his counsel are far short of completing their pre-trial investigation of the facts . . . . " This statement, combined with silence on the part of defendant throughout most of the period of delay, indicates that appellant for most of the time was not averse to the protracted nature of the proceedings.

■ Third, prejudice to the defendant. The Court has identified three interests of the defendant which the Sixth Amendment is designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193 (footnote omitted). Appellant was not incarcerated prior to trial. He has pointed to no specific instances of prejudice resulting from the delay, saying only that "[a] full transcript of this trial . . . would reveal several instances where witness [sic] testified to loss of memory with respect to the transactions which were the subject of the indictment." We cannot find prejudice to the appellant on the basis of such a vague reference as this.[3] While we agree that "[l]oss of memory . . . is not al-

---

3. We have not been provided a transcript of the testimony. *See infra*, part III.

ways reflected in the record because what has been forgotten can rarely be shown," *Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193 we cannot simply assume that the defendant was prejudiced by the delay here, especially where much of the evidence was documentary. We may assume that the delay did nothing to "minimize anxiety and concern" of the defendant, but even on this score appellant has shown little to evidence the effect of the delay on his personal life.

Balancing all these factors, we find that the length of the delay is the factor most favorable to the appellant's contention; the other factors are not in his favor. Whether we view the pre-indictment and post-indictment delay separately or in combination, we conclude that appellant's right to a speedy trial was not abridged.

### III

In its opening and closing arguments, the government showed to the jury charts purporting to illustrate each step in the alleged fraudulent transactions. At a pretrial conference, when defendant objected to the use of the charts, the trial court warned the prosecution that failure to prove the transactions illustrated might prejudice the government's case. The charts were not admitted into evidence. During the trial, the government did, in fact, provide very extensive evidence, much of it documentary, supporting most of what was shown on the charts. However, it did not introduce direct evidence of a letter described in one of seven boxes detailing a sequence of transactions under Count 11. Using the chart, appellant during his closing strenuously argued to the jury the purported lack of proof on this point. Appellant now contends that the government's failure to offer direct proof concerning one alleged step in the transaction under Count 11 required the grant of his motion for a directed verdict on that count. Moreover, he argues that the use of a chart combined with the failure to support an item shown there-on fatally prejudiced his conviction on all counts.

■ We view the evidence, of course, in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). From the portions of the trial transcript provided us, *see* F.R.A.P. 10(b), which consist of part of the government's opening argument and part of the closing arguments of both the government and defense counsel, we are unable to conclude that the evidence was insufficient as a matter of law to support appellant's conviction under Count 11. It is not disputed that the prosecution introduced direct evidence tending to establish six of the seven essential parts of the alleged illegal transaction. By reference to this evidence and to the similar pattern of conduct proven with respect to the other counts, we think the jury could reasonably infer the missing element without having direct proof.

■ The abbreviated transcript limits our review of appellant's contention of prejudice from the chart. We do not know whether cautionary instructions were requested or given. This is not, in any event, a situation, illustrated in cases cited by both appellant and appellee, where summaries of evidence, in chart form or otherwise, are themselves admitted as evidence. *Cf., e. g.,* Holland v. United States, 348 U.S. 121, 128, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Lloyd v. United States, 226 F.2d 9, 16–17 (5th Cir. 1955); United States v. Goldberg, 401 F.2d 644, 647–648 (2d Cir. 1968), cert. denied, 393 U.S. 1099, 89 S.Ct. 895, 21 L.Ed. 2d 790 (1969). *See also* United States v. Flynn, 481 F.2d 11 at 13 (1st Cir. 1973). In such cases, when the summary is not supported by underlying evidence, the danger of prejudice is especially great. Here, the jury did not take charts with them to the jury room and the alleged failure of proof concerned only one aspect of one of many counts. The government states that it supported its case by 105 exhibits. We are unpersuaded that display of the chart constituted prejudicial error.

Appellant was sentenced to be confined for three years under each of the eleven counts on which he was convicted, the sentences to run concurrently. He does not contend that the evidence was insufficient to convict under any of these counts, save Count 11. Even if there were a failure of proof or some prejudice connected with the conviction under Count 11, the argument that these factors might have so misled the jury as to cause it to convict the appellant under the other ten counts is implausible.

We have considered appellant's other contentions on appeal and likewise find them to be without merit.

Affirmed.

COFFIN, Chief Judge (concurring).

I concur in the judgment of affirmance, but not without grave reservations. Were it not for the absence of a showing of any substantial prejudice from delay, I would strongly urge that the co-existence of (1) deliberate and extensive resort to civil investigatory powers with the prospect of ultimate criminal prosecution clearly in mind, (2) the absence of any notice to appellant that criminal prosecution was contemplated, and (3) a four-year delay between the alleged fraudulent transactions and indictment had risen to the level of a violation of due process.

While the government did not initiate the § 21(a) bankruptcy investigation and had a non-criminally motivated interest in trying to recoup SBA losses, thus not bringing "a civil action solely to obtain evidence for its criminal prosecution", United States v. Kordel, 397 U.S. 1, 11–12, 90 S.Ct. 763, 769, 25 L.Ed.2d 1 (1970), it is hard to say that the delay in the criminal proceedings was not at least partly "an intentional device to gain tactical advantage over the accused." United States v. Marion, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971), or "purposive", even though not in bad faith. United States v. Parrott, 248 F.Supp. 196 (D.D.C. 1965). Here, the government made a deliberate choice to hold the criminal prosecution in abeyance during which time the fruits of the civil proceedings, regularly sent to the U. S. Attorney, were, in the words of SBA's chief litigation counsel, "of tremendous significance" to the criminal case. Moreover, it is clear that the government "failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution." *Kordel, supra,* at 11 of 397 U.S., at 769 of 90 S.Ct.

In the past we have not adopted the approach of some other courts in shifting the burden of proof as to prejudice from delay, see, e. g., United States v. Rucker, 150 U.S.App.D.C. 314, 464 F.2d 823 (1972). I hesitate to recommend an arbitrary time limit which would trigger a shifting from a defendant to the government. But it seems to me that where the government is responsible for the deliberate tactical delay in the formal institution of criminal proceedings for almost the entire limitations period, without notice to the accused, we would well be justified in imposing on the government the burden of proving the absence of prejudice, difficult though that burden may be to sustain.