UNITED STATES of America, Plaintiff,

v.

Jesse Bernard DOWL, Defendant.

No. 3–72 Cr. 212.

United States District Court,
D. Minnesota,
Third Division.

May 27, 1975.

Robert G. Renner, U. S. Atty, by Daniel M. Scott, Asst. U. S. Atty., for plaintiff.

James E. Schatz, Doherty, Rumble & Bulter, St. Paul, Minn., for defendant.

## MEMORANDUM AND ORDER

ALSOP, District Judge.

The defendant has been charged on a one count indictment with knowingly receiving a firearm in and affecting commerce after having been convicted of a felony, in violation of 18 U.S.C.App. § 1202(a)(1). The matter comes before the court upon the motion of the defendant to dismiss the indictment on the grounds that his right to a "speedy and public trial" has been denied under the Sixth Amendment to the Constitution of the United States or, in the alternative, to dismiss the indictment due to an "unnecessary delay in bringing a defendant to trial" under Rule 48(b) of the Fed.R.Cr.P.

A chronology of key events leading to this motion is as follows:[1]

1. On October 22, 1972, defendant was arrested by officers of the St. Paul Police Department in possession of a firearm and was incarcerated at the St.

[1] The relevant facts have been obtained from the affidavits, oral arguments, files, records, and proceedings herein. The court is not unaware of the recommended procedure of taking evidence at the hearing on a motion such as the one before it, United States v. Strunk, 467 F.2d 969, 971 (7th Cir. 1972), rev'd on other grounds, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), however, that procedure is not deemed necessary in this case as the facts relied on in the above chronology appear uncontroverted.

Paul City Jail until October 24, 1972, when released.

2. On December 7, 1972, the present indictment was filed with the United States District Court for the District of Minnesota charging the defendant with the crime of knowingly receiving a firearm in and affecting commerce on or about October 22, 1972, after having been convicted of a felony.

3. On May 10, 1973, defendant was arrested and charged with a drug offense in the city of Ben Harbour, Michigan.

4. In June of 1973, defendant learned that a federal detainer had been filed against him with the Michigan authorities based upon the indictment in this case.

5. On July 23, 1973, defendant, who was represented by counsel, was convicted of the drug offense upon which he was charged on May 10, 1973. A sentence of two to five years was imposed by the Michigan court.

6. On November 7, 1974, defendant completed serving his sentence and was turned over to Federal authorities for a removal hearing. United States Magistrate Hackett postponed the hearing on the Removal Petition until November 18, 1974, so that an attorney could be appointed to represent defendant at the hearing. Defendant, however, appeared again before Magistrate Hackett on November 12, 1974, and waived the removal hearing.

7. On December 3, 1974, defendant appeared, as ordered, in United States District Court for the District of Minnesota before Magistrate J. Earl Cudd. Attorney James Schatz was appointed to represent the defendant in the proceedings before this court.

8. On December 19, 1974, defendant filed the instant motion to dismiss the indictment and a hearing was held February 28, 1975.

■ The right to a speedy trial "has its roots at the very foundation of our English law heritage" and "is as fundamental as any of the rights secured by the Sixth Amendment." Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). The defendant in this case contends that his Sixth Amendment right to speedy trial has been denied by the more than 28 month delay in bringing him to trial. If defendant has been denied a speedy trial, the remedy is clearly that of dismissing the indictment. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

The defendant also contends that even if this court does not find that his constitutional right to speedy trial has been violated, it can still dismiss the indictment under the authority of Rule 48(b) of the Fed.R.Cr.P.

■ The difficulty of determining when a defendant has been denied speedy trial is caused by the vagueness of the concept and the inability to define with precision the exact number of months or years which amount to denial. Barker v. Wingo, *supra*, 407 U.S. at 521, 92 S.Ct. 2182. Due to this imprecision, the Supreme Court has formulated a balancing test that should be applied in an effort to weigh the conduct of the prosecution and that of the defendant.

A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192. [footnote omitted].

In applying these factors to the case at bar the court finds the following:

*Length of Delay*

■ The defendant was indicted on December 7, 1972, and filed a motion to dismiss on December 19, 1974. Separating these two dates is a 24 month period in which defendant was not brought to trial.[2] This period of time is sufficiently inordinate to serve as a "triggering mechanism" to create the presumption of prejudicial delay. Barker v. Wingo, *supra;* United States v. Washington, 504 F.2d 346 (8th Cir. 1974). Once the presumption is found to exist, the government is responsible for explaining or justifying the reason for the delay. Barker v. Wingo, *supra,* 407 U.S. at 531, 92 S.Ct. 2182; United States v. Rucker, 150 U.S.App.D.C. 314, 464 F.2d 823, 825 (1972).

*Reasons for the Delay*

The government argues that the delay between December 7, 1972, and May 10, 1973, is excusable because the defendant was a fugitive. Defendant, on the other hand, argues that he had no knowledge that there was an indictment pending against him and that the federal authorities knew or should have known of his whereabouts.

Defendant, through affidavit, has submitted that after leaving St. Paul he lived at 1436 Washington Street, Gary, Indiana, until sometime in January of 1973 and then moved to the home of his parents at 2692 Polk Street, Gary, Indiana—a location to which he could have been easily traced. In further support of his contention, defendant refers the court to the December 11, 1972, report of Special Agent Michael W. Hegerfeld of the Bureau of Alcohol, Tobacco and Firearms, which states in part:

> Information was received that sometime between October 23 and October 25, 1972, Dowl left the St. Paul area and returned to his place of residence, 1436 Washington Avenue, Gary, Indiana. . . .

Special Agent Hegerfeld has submitted an affidavit to the court stating that he notified Special Agents Dale Monroe and Michael Blackman of the Bureau of Alcohol, Tobacco and Firearms in the Gary, Indiana, area that the defendant may be staying at 1436 Washington or at the Lavella Hotel and that both agents informed him that they would attempt to locate defendant Dowl.

■ The court is of the opinion that a lengthy delay between indictment and arrest, if attributable to the negligence or intentional neglect of the government officers, would weigh against the government in applying the balancing test. United States v. Washington, *supra,* 504 F.2d at 348. Since it is not clear from the affidavit of Special Agent Hegerfeld whether agents did in fact attempt to find the defendant in the Gary, Indiana, area it would be difficult for the court to affix this segment of the delay to the government or the defendant. However, it is clear that the government has not succeeded in persuading the court that defendant Dowl should be charged with this delay.

The more significant segment of delay occurred between the arrest of defendant in Michigan in May of 1973 and the filing of this motion approximately 19 months later. The government contends that this period of delay should be charged to the defendant because he did not demand trial pursuant to the Interstate Agreement on Detainers Act; 18 U.S.C.App. § 2, art. III.

The defendant argues that even though he was aware of the general nature of his right to speedy trial he was unaware that such a demand would be worthwhile or that by not making a demand the government would later argue that he had waived his right to a speedy trial. Of greater significance is defendant's contention that he was without counsel during the period between his conviction in Michigan in July of

---

2. The court will not consider the time period after December 19, 1974, as this delay is a result of the instant motion initiated by defendant.

1973 and his arraignment in Minnesota on December 3, 1974. Defendant argues that not having funds to employ counsel and none being appointed for him by the government, he should not now be said to have waived his constitutional right. It is also noteworthy that the government as well as the defendant could have taken advantage of the Interstate Agreement on Detainers Act, 18 U.S.C.App. § 2, art. IV, to transfer defendant to Minnesota for speedy trial.

■ Pursuant to the provisions of the Interstate Agreement on Detainers Act, 18 U.S.C.App. § 1 et seq., either the prisoner or the state can request that the prisoner be temporarily transferred to a state where an indictment is pending so that a speedy and efficient prosecution may follow. While this provision places no duty upon the state, or in this case the United States, to bring the prisoner to trial absent a demand by him, it does provide a procedure whereby the state may have the prisoner transferred to its custody if it so chooses. United States v. Cappucci, 342 F.Supp. 790, 792–93 (E.D.Pa.1972). However, the fact that the defendant is incarcerated in another jurisdiction does not relieve the government from providing a speedy trial under the Sixth Amendment. Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Further, though defendants may seek to put off trials in many instances, "the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." Dickey v. Florida, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 1569, 26 L.Ed.2d 26 (1970).

The government has argued that the segment of delay from May 10, 1973 to December 19, 1974 should be charged to the defendant. The court is not convinced that the delay is chargeable to the defendant, and is more inclined to charge the delay to the government.

*Defendant's Assertion of His Right*

It is uncontroverted that defendant did not assert his right to a speedy trial. The defendant argues that he felt it would be useless to so assert and that he was not knowledgeable of the full import of his actions since not represented by counsel for a signficant portion of the delay after having learned of the federal detainer. The government argues that the assertion of the right to speedy trial is a crucial factor in applying the *Barker* test and implies that having not asserted the right, the defendant should not now be successful in claiming he has been denied a speedy trial.

In Barker v. Wingo, *supra*, the Court addressed itself to the issue of whether a defendant waives his right to speedy trial by not asserting a demand. While rejecting any rigid formulas by which this decision could be made, the Court went on to provide guidance for the trial court in making this discretionary decision.

> We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. . . . It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. . . . *Id.* at 528–29, 92 S.Ct. at 2191.

The Court explained that by placing some responsibility on the defendant to assert the right to speedy trial this right is somewhat dissimilar from the waiver of other fundamental rights wherein the entire responsibility is upon the "prose-

cution to show that the claimed waiver was knowingly and voluntarily made." *Id.* at 529, 92 S.Ct. at 2191. The burden, however remains upon the prosecution to assure that the defendant is brought to trial. *Id.* at 527, 529, 92 S.Ct. 2182. In another section of the opinion, the court emphasized "that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2193.

■ In case before the court, defendant was indicted December 7, 1972. Except for a short period of time between May 10, 1973, and July 23, 1973, when represented by counsel on drug charges in Michigan, defendant was without counsel until appointment was made in United States District Court on December 3, 1974. Although the defendant admits some knowledge of his right to demand speedy trial, the court is not convinced that defendant, without counsel, should be deemed to have waived his right or even that this lack of demand should weigh against the defendant in applying the *Barker* balancing test.

*Prejudice to the Defendant*

■ Evaluation of the prejudice suffered by a defendant due to delay is assessed in "light of the interests of defendants which the speedy trial right was designed to protect" including: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* Prejudice, however, is only one of the balancing factors to be considered and its absence does not necessitate a finding that defendant's right has not been violated. Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). Further, the fact that defendant was in prison during a large portion of the delay does not mean that he was not prejudiced by such delay. Smith v. Hooey, *supra;* Strunk

v. United States, *supra;* Moore v. Arizona, *supra.*

In the instant case the defendant argues that the delay has prejudiced him in that there has been a loss of memory by key witnesses, that he could not take full advantage of rehabilitation programs in prison, and that he lost the opportunity to serve a sentence at least partially concurrent with the one served in Michigan. *See* Smith v. Hooey, *supra.* The government counters that argument by indicating that witness memory will not be of major importance in this case, that defendant was paroled at the earliest possible time allowable by law, and that the length of defendant's sentence on the Michigan charges will be considered by the Federal District Court when announcing sentence.

■ Although prejudice may sometimes be presumed to exist by mere passage of time because memories fade, United States v. Mann, 291 F.Supp. 268, 271 (S.D.N.Y.1968), that factor does not bear heavily in this instance as the defendant is charged with a rather uncomplicated crime and the witnesses are still available. *See* Barker v. Wingo, *supra,* 407 U.S. at 531, 532, 92 S.Ct. 2182. There is, however, some reason to believe that defendant was prejudiced by not being able to take part in certain rehabilitative programs and not having the opportunity to seek concurrent sentences.[3] Smith v. Hooey, *supra;* Strunk v. United States, *supra;* United States v. Rucker, *supra.*

■ In examining the factors that go into the balancing test, the court finds that the length of delay and the prejudice to the defendant weigh in favor of the defendant. The reason for the delay takes on rather neutral characteristics as does the assertion of the right by the defendant. However both could well be charged at least in part to the government. The court, while genuinely concerned about the delay in prosecution and the possible

---

3. See the Affidavit of Jesse Bernard Dowl dated January 21, 1975.

prejudice caused to the defendant, is not disposed to rule on the defendant's claim that his Sixth Amendment right to speedy trial has been violated, but prefers instead to consider these factors as they apply to the defendant's alternate ground for dismissal.

 The alternate ground suggested by the defendant is the discretionary authority of the court to dismiss due to "unnecessary delay in bringing a defendant to trial." Rule 48(b), Fed.R.Cr. P. *See* Mathies v. United States, 126 U.S.App.D.C. 98, 374 F.2d 312 (1967); United States v. DeLeo, 422 F.2d 487 (1st Cir. 1970) cert. denied 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970). In determining whether or not to exercise its discretion in this manner, the court should and does in this instance consider factors similar to those considered with respect to the constitutional argument of a denial of speedy trial. Hodges v. United States, 408 F.2d 543 (8th Cir. 1969). The trial court, as well as the government and the defendant, has an interest in prompt disposition of criminal indictments. *Id.*; Barker v. Wingo, *supra*; United States v. Clay, 481 F.2d 133 (7th Cir. 1973) cert. denied, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 247 (1973).[4]

The Congress has formalized this concern by enactment of the Speedy Trial Act of 1974 (18 U.S.C. § 3161 et seq.) and this court has demonstrated its concern for minimizing undue delay and prompt disposition of criminal cases by adopting a plan to achieve this desired goal pursuant to Rule 50(b) of the Fed. R.Cr.P. (See order dated November 14, 1972).[5]

 The court is persuaded that in light of the lengthy delay visited upon the defendant in this instance, prejudice to him is inherent, and that the indictment against the defendant Jesse Bernard Dowl should be dismissed.

It appears to the court that such a result is in the best interests of the defendant, the system, and indeed even the government. To require the defendant to stand trial under the circumstances here presented would appear to the court to typify the adage that "justice delayed is justice denied".

Upon the foregoing,

It is ordered That the motion of the defendant to dismiss the indictment pursuant to Rule 48(b) of the Fed.R.Cr.P. be and the same hereby is granted and the indictment is dismissed.

---

4. United States v. Clay, *supra*, involved the reversal of the district court's dismissal of an indictment pursuant to Rule 48(b). The circuit court held that although the district court had power to promulgate a rule requiring dismissal for unreasonably pre-indictment delay, such a rule should be applied uniformly and not on an *ad hoc* basis. The case before this court is distinguishable in that the delay took place subsequent to the indictment and the assignment of the case to the district court calendar in 1972.

5. No. 9(b),(1) of that plan places responsibility on the United States Attorney to undertake to obtain the presence of a prisoner, being held in another state, for purposes of plea and trial.