UNITED STATES of America, Appellee,

v.

Michael E. JONES, Appellant.

No. 72-1018.

United States Court of Appeals, District of Columbia Circuit.

Dec. 22, 1972.

Rehearing Denied April 18, 1973.

Messrs. Paul Daniel and Donald G. Avery, Washington, D. C. (both appointed by this Court), were on the brief for appellant.

Messrs. Harold H. Titus, Jr., U. S. Atty., John A. Terry, James E. Sharp, and William E. Reukauf, Asst. U. S. Attys., were on the brief for appellee.

Before DANAHER, Senior Circuit Judge, and ROBINSON and WILKEY, Circuit Judges.

PER CURIAM:

The appellant had been at liberty on personal recognizance since August 20, 1969 when on March 19, 1971, he filed a motion to dismiss the indictment for lack of a speedy trial. The motion was denied and a jury trial went forward at once. The jury returned guilty verdicts on five counts charging assault with intent to commit robbery while armed and associated offenses. It is now urged that the conviction was invalid because

of an inordinate delay which had given rise to a prima facie presumption of prejudice.

Just as the appellant's guilt was overwhelmingly established, so was evidence of actual prejudice completely lacking.

Where we have discussed in our cases [1] various gradations of distinctions under particular circumstances as we considered the applicability of the principles enunciated in Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905), we have never lost sight of the important element of public justice. Here, and in the future, our assessment of that element as well as of the rights of the defendant must be guided by considerations outlined so cogently in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors there spelled out have indeed been analyzed and applied as affording a balancing test in United States v. Parish, 152 U.S.App.D.C. 72, 468 F.2d 1129, as recently as September 25, 1972.

On February 15, 1969, one Gatling, an employee of Safeway Stores was to take a bag of money from a store to a bank. That employee was accompanied by an armed guard. Gatling, who was to drive the truck, presently found himself looking into the barrel of a gun. The culprit seized the bag of money, got out of the truck and fled, only to be pursued by the guard, and a gun battle ensued in the course of which Jones was wounded. The episode had been witnessed by a customer who had seen Jones earlier and who presently observed Jones trying to place a pistol in the trunk of a nearby car. An off-duty police officer saw Jones run past him at which time Jones still had the pistol in his hand. Within minutes, other police converged on the scene, the pistol Jones had carried was retrieved, and the officers noticed that three rounds had been fired. Various witnesses additionally contributed other details, indeed, seldom do we encounter so completely established proof of such a crime. Identification of Jones was established peradventure. Jones was promptly arrested, was indicted April 14, 1969, and arraigned 4 days later. On May 5th he filed a motion to suppress identification testimony and two motions relating to Grand Jury proceedings. Those motions were heard on June 27, the Grand Jury minutes were produced and ultimately the motion to suppress was withdrawn. Jones was released on personal recognizance on August 26, 1969.

The case was called October 3, 1969, October 21, November 13, December 5 and thereafter, but was not reached for trial. Jones was at liberty throughout the last mentioned period. He filed his motion to dismiss for want of a speedy trial on March 17, 1971. The motion was denied [2] two days later and trial went forward immediately. We certainly cannot fault the trial judge in light of the record which we have carefully considered. We could, of course, dispose of the issues and speak only in general terms. We have decided, rather, to be more specific, and thus hopefully more helpful, by supplementing our earlier analysis in United States v. Parish, *supra*.

■ Thus, we turn back once again to Barker v. Wingo, *supra*. There the Court while not "disapproving a presumptive rule adopted by a court in the exercise of its supervisory powers which establishes a fixed time period within which cases must normally be brought",

---

1. See e. g., Part II of our opinion in United States v. Medley, 146 U.S.App.D.C. 396, 452 F.2d 1325 (1971), and discussion in United States v. Dunn, 148 U.S.App.D.C. 91, 101, 459 F.2d 1115, 1125 (1972) and cases cited.

2. District Judge Aubrey E. Robinson, Jr. at the motions hearing observed:

"We cannot make mechanistic decisions and try cases *ad seriatim* in terms of the chronology of the date of indictment, because to do so would work far greater injustices not only to individual defendants but to the system than could be conceived. Priorities develop for various and sundry reasons, and they have to be considered on an ongoing basis. . . ."

established a balancing test as the method by which claims of Sixth Amendment speedy-trial denials are to be resolved. In the process, *Barker* identifies particularly four factors of prime significance: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192. As this enumeration indicates, and indeed as *Barker* emphasizes, the accused's conduct as well as the prosecution's is to be weighed. *Id.* at 530, 92 S.Ct. 2182. The balance here decidedly disfavors appellant.

To be sure, the passage of 25 months before trial of a street-robbery case calls for an assessment of the circumstances contributing to the delay. See United States v. Ransom, 151 U.S. App.D.C. 87, 88, 465 F.2d 672, 673 (1972); Smith v. United States, 135 U. S.App.D.C. 284, 286, 418 F.2d 1120, 1122 (1969). No real basis appears here for faulting either side for the first ten months, which were largely consumed by the exigencies of indictment, pretrial motions and, as the record clearly enough reflects, efforts toward disposition of the case by plea. The undisputed explanation for not reaching trial during the ensuing fourteen-month period was the trial judge's heavy involvement in other litigation. This is *not* to say that this hard fact completely answers appellant's speedy-trial complaint, for while a "more neutral reason" like "overcrowded courts" is to be "weighted less heavily," it is nonetheless to be counted "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Barker v. Wingo, *supra*, at 531, 92 S.Ct. at 2192. It *is* to say that the delay was not "arbitrary, purposeful, oppressive or vexatious," see Hinton v. United States, 137 U.S.App. D.C. 388, 393, 424 F.2d 876, 881 (1969); Smith v. United States, 118 U.S.App.D. C. 38, 41, 331 F.2d 784, 787 (*en banc* 1964), or "the result of . . . negligence or callous indifference to the requirement of speedy trial . . . ," see

Hedgepeth v. United States, 124 U.S. App.D.C. 291, 295, 364 F.2d 684, 688 (1966), and that it must be taken for the institutional delay that it really was.

Moreover, the burden on the court was not the only apparent reason for not getting to trial earlier during the last fourteen-month period. Appellant voiced no speedy trial considerations until two days before March 19, 1971, the date on which trial commenced, when he moved to dismiss the indictment. It is impossible to say that, despite the attendant difficulties, appellant would not have obtained an earlier trial had he asked for it. In *Barker*, the Court took pains to "emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 532, 92 S.Ct. at 2193. There is no meaningful assertion of the right where, as here, the accused waits until the eve of trial to invoke it, and then only as a basis for getting rid of the prosecution. The conclusion that the accused was uninterested in a speedy trial seems as inevitable here as the Court found it to be in *Barker*. *Id.* at 534, 92 S.Ct. 2182.

Lastly, the record falls short of indicating any substantial prejudice to appellant in consequence of the delayed trial. There is always, of course, a disquieting encroachment on personal liberty attendant upon any indictment— whether the accused is free on bail or not—which can be dispelled only by trial and acquittal. *Id.* at 532–533, 92 S.Ct. 2182. But as *Barker* teaches, the impact of delayed trial is lessened considerably by pretrial release, and much more by a lack of prejudice to presentation of the defense. *Id.* at 530, 92 S.Ct. 2182.

Our appellant remained enlarged on bail for 17 of the 25 months complained of and, as the trial judge found, no embarrassment to his defense resulted. His sole contention in the latter connection is that an alibi witness died prior to trial, and that claim is discounted by the circumstances. Appellant did not mention the alleged witness to his counsel until the day the motion to dismiss.

was filed, and the overwhelming evidence against appellant belies any thought that the witness—if indeed there was one—could possibly have swayed the jury's verdict. See Coleman v. United States, 142 U.S.App.D.C. 402, 408, 442 F.2d 150, 156 (1971). Nor does it appear that the sentence imposed upon appellant was in any real way connected with the delay of trial. Appellant points to an observation, made in the report evaluating his potential for benefit from a commitment as a youth offender, that he was "comparatively older than the population within the Youth Center." That statement, in light of other reported considerations seriously militating against youth offender treatment, was hardly capable of influencing his sentence.

We are entirely satisfied that the judgment must be

Affirmed.