No. 13478

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

JOHN J. CARDEN, a/k/a
JAMES J. CARDEN and GLORIA
(EUSEK) CARDEN,

Defendants and Respondents.

---

Appeal from:   District Court of the First Judicial District,
               Honorable M. James Sorte, Judge presiding.

Counsel of Record:

   For Appellant:

      Hon. Mike Greely, Attorney General, argued, Helena, Montana
      Robert S. Keller, Special Assistant Attorney General,
        argued, Helena, Montana

   For Respondents:

      Smith, Emmons, Baillie and Walsh, Great Falls, Montana
      Robert J. Emmons argued, Great Falls, Montana
      Knight, Dahood and Mackay, Anaconda, Montana
      Wade J. Dahood appeared, Anaconda, Montana

---

                           Submitted:  February 16, 1977

                           Decided:  MAY 2 5 1977

Filed: MAY 2 5 1977

_____
                        Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendants James J. Carden and his wife Gloria Eusek Carden were charged with several crimes arising out of a $5,000 settlement of her Workmen's Compensation claim. The district court, Lewis and Clark County, dismissed the case on the ground that defendants had been denied their constitutional right to a speedy trial. The state appeals. We reverse.

On December 20, 1974, the attorney general filed a direct Information against the defendants in the district court of Lewis and Clark County. Defendant James J. Carden is the former administrator of the Workmen's Compensation Division, Department of Labor and Industry, of the State of Montana. Defendant Gloria Eusek Carden is the wife of defendant James J. Carden. The Information contained 19 counts charging defendants with the following crimes in connection with a $5,000 settlement of Gloria Eusek Carden's claim under the Workmen's Compensation Act: Embezzlement by a public officer; grand larceny; obtaining money or property by false pretenses; presenting false proofs on a policy of insurance; officer illegally interested in a contract; offering false or forged document to be recorded; preparing false evidence; and offering false evidence.

Defendants made their initial appearance on January 3, 1975, before District Judge Gordon R. Bennett. Defendants were granted additional time to brief the Information and were released on their own recognizance. On January 9, 1975, District Judge Nat Allen assumed jurisdiction of the case upon request of Judge Bennett.

- 2 -

On January 17, 1975, Judge Allen granted defendants an extension of time to February 10 in which to file their motions and briefs. On February 10 defendants filed 56 motions attacking the Information in various particulars. Defendants received an extension of time to February 26 to file their supporting brief.

On March 18, Judge Allen revised the briefing schedule on defendants' motions so that defendants' brief was due on April 21, the state's answering brief was due on May 21 and defendants' reply brief was due on May 30. The state contends this was done to synchronize the briefing schedule in this case with the briefing schedule in State v. James J. Carden, Cause #3937 in the district court. Defendants deny this.

On May 20, the state received an extension of time to June 4 to file its answering brief. Thereafter defendants received an extension of time to July 3 in which to file their reply brief.

On August 4, the state moved to disqualify Judge Allen resulting in an appeal to this Court. We ruled that Judge Allen was disqualified. On September 30, District Judge Jack D. Shanstrom assumed jurisdiction.

On October 21, Judge Shanstrom set all pending motions for hearing on November 17. On November 3, defendants disqualified Judge Shanstrom.

On December 9, District Judge Paul G. Hatfield assumed jurisdiction. Judge Hatfield set all motions by the defendants for hearing on February 4, 1976. At the hearing, Judge Hatfield requested counsel to submit proposed orders and requested the state to review its Information for consolidation of counts. According to the state, it subsequently wrote Judge Hatfield suggesting that the Information could be reduced to 6 counts and the judge concurred.

On April 14, 1976, Judge Hatfield entered an order (1) dismissing 13 counts of the Information, (2) granting the state leave to file an amended Information, (3) indicating that many of the defendants' original motions were rendered moot by the dismissal of the 13 counts, and (4) setting a further hearing for April 27. This was subsequently continued to May 4 due to inclement weather.

In the meantime, on April 21, the state filed an amended Information containing 6 counts. In the amended Information the defendants were charged with 6 crimes generally corresponding to the remaining counts in the original Information. The crimes charged in the amended Information were: Embezzlement by a public officer; grand larceny; offering a forged or false document to be recorded; and preparing false evidence.

Following the hearing on May 4, Judge Hatfield set May 14 as the date for arraignment of defendants on the amended Information; May 17 was set for hearing further motions to be filed by defendants; and June 17 was set as the tentative trial date.

On May 11, defendants filed their motion to dismiss the case for denial of a speedy trial in violation of the Sixth Amendment to the United States Constitution and Art. II, Section 24, 1972 Montana Constitution.

On May 17, defendants presented the state with 25 motions attacking the amended Information; a motion to dismiss all charges because of prejudicial pretrial publicity; a motion for change of place of trial; a demand for production of documents for trial; a motion for production of documents; and a motion to compel the state to furnish defendants with a copy of any oral or written confessions or admissions with a list of witnesses.

On May 27, defendant Gloria Eusek Carden moved for a severance of her trial from that of James J. Carden.

On June 8, Judge Hatfield, who was then engaged in a state-wide campaign for election as Chief Justice of this Court, removed himself from jurisdiction in the case, following a motion by defendants.

District Judge James Sorte then assumed jurisdiction and set all motions by defendants for hearing on June 17. Following hearing all motions by defendants were denied, except those relating to discovery. Trial was set for August 16.

On July 16, defendants requested a rehearing on the issue of a speedy trial. The rehearing was held on July 28, in Kalispell during the annual convention of the State Bar of Montana. Judge Sorte ruled from the bench that the case be dismissed for lack of a speedy trial. The state filed its notice of appeal the following day. On August 1, Judge Sorte filed a memorandum opinion setting forth the reasons for his ruling.

The appeal was originally argued on October 22, 1976 and reargued on February 9, 1977.

The sole issue on appeal is whether the defendants have been denied their constitutional right to a speedy trial. We note defendants have presented 16 additional issues for review relating to other pretrial aspects of the case, which we will not review at this time as the district court's dismissal is based exclusively on denial of a speedy trial.

Although the arguments of the respective parties on the speedy trial issue consist of hundreds of pages of briefs filed in the district court and in this Court on appeal, we will endeavor

summarize the principal positions of the respective parties in brief, understandable form. In so doing, we will confine ourselves to the basic thrust of the arguments as we view them, directing our attention to the forest rather than the individual trees.

The defendants principally contend that they have been denied their constitutional right to a speedy trial under the principles enunciated by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L ed 2d 101, and our decisions in State v. Steward, 168 Mont. 385, 543 P.2d 178, 32 St.Rep. 1185; State ex rel. Sanford v. Dist. Ct., _____Mont._____, 551 P.2d 1005, 33 St.Rep. 644; and State v. Keller, ____Mont. _____, 553 P.2d 1013, 33 St.Rep. 795. These cases generally involve a sensitive balancing of four principal factors in the individual case to determine whether a given defendant has been denied a speedy trial: (1) length of delay, (2) reasons for the delay, (3) assertion of the right by defendant, and (4) prejudice to defendant.

Defendants contend that when these four factors are properly evaluated and balanced under the circumstances of this case, defendants have clearly been denied their right to a speedy trial. They emphasize the length of the delay here is excessive and unreasonable; that the principal reason for the delay is the manner in which the state chose to prosecute the case by a 19 count Information covering an essentially simple factual transaction; that the duty is on the state to afford defendants a speedy trial, which defendants have neither waived nor consented to; and that defendants have suffered severe actual prejudice by the failure of the state to bring them to trial within a reasonable time.

- 6 -

In short, defendants claim the state is responsible and chargeable with unreasonably delaying the trial of defendants without justification entitling defendants to dismissal of the charges against them.

The basic position of the state, on the other hand, is that while the four factor balancing test of Barker and its Montana progeny Steward, Sanford and Keller is controlling, a proper evaluation and balancing of these factors demonstrates that defendants have not been denied a speedy trial within constitutional requirements. The state argues it has pursued the prosecution of this case with dispatch and cites several cases where delays substantially in excess of those here were held not to constitute violations of constitutional speedy trial guarantees: Barker, supra; United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L ed 2d 627; United States v. Lane, 465 F.2d 408; United States v. Jones, 475 F.2d 322; United States v. Skeens, 494 F.2d 1050; United States v. Churchill, 483 F.2d 268; Ricon v. Garrison, 517 F.2d 628; United States v. Fairchild, 526 F.2d 185; United States v. Stein, 456 F.2d 844; Constabile v. State, (Okla.Cr.) 513 P.2d 588.

The state emphatically denies that it is responsible or chargeable with the principal delays involved in this case, viz. the time necessarily consumed in researching, briefing, arguing, and securing a decision on the voluminous motions filed by the defendants and the time necessarily consumed incident to disqualification of judges by both the defendants and the state. The state further contends that the defendants have never sought a speedy trial and are not now prepared to go to trial. Finally,

the state distinguishes Steward, Sanford and Keller but requests us to review our prior holdings in Steward and Sanford on assertion of the right to a speedy trial by defendants.

As a further preface to our decision herein, we note the prior rulings of the district court on defendants' motion for dismissal of this case for denial of a speedy trial. The district court initially denied defendants' motion. Subsequently a rehearing was granted and the district court granted defendants' motion. Briefly stated, the district court reasoned that the long delay in bringing the defendants to trial in this case established a prima facie case of denial of a speedy trial; that both presumptive and actual prejudice to defendants resulted from this delay; that three principal reasons accounted for the delay in this case (1) the Montana disqualification law and the procedural practicalities attendant on changing judges, (2) the filing of multiple counts (19) by the prosecution in a relatively simple factual situation, and (3) the state's disqualification of Judge Allen after he had considered the case for over 7 months; that none of these delays was chargeable to defendants; and therefore the defendants were entitled to dismissal for lack of a speedy trial. Implicit in the district court's reasoning although not specifically stated therein is the proposition that delays not chargeable to the defendants are the responsibility of the state.

The starting point in our analysis of the speedy trial issue is Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L ed 2d 101, which both the state and the defendants concede is controlling. Barker rejects the two arbitrary approaches to the issue of speedy trial in favor of a balancing test in this language:

"We, therefore, reject both of the inflexible approaches--
the fixed-time period because it goes further than the
Constitution requires; the demand-waiver rule because it
is insensitive to a right which we have deemed fundamental.
The approach we accept is a balancing test, in which the
conduct of both the prosecution and the defendant are
weighed." 407 U.S. 529, 530.

The substance of the balancing test in Barker is described
in these words:

"A balancing test necessarily compels courts to
approach speedy trial cases on an ad hoc basis.
We can do little more than identify some of the
factors which courts should assess in determining
whether a particular defendant has been deprived of
his right. Though some might express them in
different ways, we identify four such factors:
Length of delay, the reason for the delay, the de-
fendant's assertion of his right, and prejudice to
the defendant." 407 U.S. 530, 531.

Montana has adopted and applied the four factor balancing
test in Barker in determining the speedy trial issue under Art.
II, section 24, 1972 Montana Constitution, as well as under
the United States Constitution in three principal cases:   State
v. Steward, supra; State ex rel. Sanford v. Dist. Ct., supra;
State v. Keller, supra.

The length of the delay between the filing of the Information
and the date set for trial (544 days) triggers the inquiry here.
Barker v. Wingo, supra.  It establishes a prima facie case of
denial of a speedy trial.  State ex rel. Sanford v. Dist. Ct.,
supra.  If this prima facie case remains unrebutted, the issue is
settled.  In this case, the state's rebuttal must be weighed and
considered in the light of the four factor test of Barker.

The first factor to be considered is the length of the
delay.  In this case the state concedes that the time lapse is
sufficient to trigger an inquiry into the other three elements
of the balancing test.  We agree.  We note that speed alone is
not the determining factor.  Rather it is the manner in which

the state has pursued the prosecution in the light of the totality of the circumstances in the case. The United States Supreme Court has placed this consideration in perspective in the following passage from United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L ed 2d 627, 630:

> "However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' * * * 'Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances * * *. The delay must not be purposeful or oppressive.' * * * '[T]he essential ingredient is orderly expedition and not mere speed.'"

In our view the state has pursued the prosecution with reasonable diligence. There is little "dead time" in which nothing was done which distinguishes this case from Steward, Sanford and Keller. Although defendants argue the state could have proceeded more expeditiously had it chosen to charge the defendants with a single crime or no more than the 6 charges they eventually ended up with in the amended Information, this is largely speculative and unconvincing in light of the 25 motions filed by defendants attacking the amended Information and the additional discovery motions, venue motion, severance motion, and motion relating to pretrial publicity. In any event, we cannot say the law of Montana is so clear that the manner of charging defendants in this case rendered the initial filing of a 19 count Information in this case unreasonable. In our view the prosecution in this case has proceeded in orderly and reasonable progression

step-by-step toward trial under the criminal procedural statutes of this state.

The second factor to be weighed and considered under _Barker_ involves the reasons for the delay. This has been partially touched upon in the preceding discussion. To be more precise, the principal delays in this case were occasioned by the time necessarily consumed in researching, briefing, and arguing defendants' 56 original motions, disqualification of judges by both the state and defendants with resulting procedural delays, requests for extensions of time by both the state and defendants, and the late filing of briefs. We do not suggest for a moment that defendants were not entitled to file their 56 motions, disqualify 2 judges, or request extensions of time. What we do say is that the resulting delays are not the responsibility of nor chargeable to the state.

This brings us to one of the principal bones of contention between the state and defendants. The state contends it is not chargeable with delays inherent in the criminal justice system in the absence of fault on its part. Defendants contend that such delays are chargeable to the state because it is the state's obligation to afford the defendants a speedy trial and the defendants have no control over the state's criminal procedure statutes or its criminal justice system.

We reject the basic approach to this problem taken by defendants and impliedly by the district court. This approach indicates that if defendant is chargeable with a given number of days delay, the state is automatically chargeable with the remainder without regard to other considerations. Such an arbitrary and mechanical approach is unreasonable and goes far beyond the

- 11 -

speedy trial provisions of the federal and state constitutions. It leaves society naked of the means to protect itself in the face of any protracted and spirited defense. It is directly contrary to the four factor balancing test in Barker where the conduct of both the prosecution and the defendant is weighed under the circumstances of the particular case under consideration.

We have previously held the time reasonably consumed by a defendant's good faith motions requiring research, hearing and determination are not chargeable to defendant. State v. Keller, supra. Logic and reason compel application of the same rule to the state's good faith efforts.

In our view the circumstances of this case indicate no intentional or deliberate delay by the state, an insignificant amount of "dead time", no "institutional delays" in the criminal justice system beyond the statutory procedural rights of the parties, and no substantial delays for which the state is responsible or chargeable.

The third factor in the balancing process, defendants' assertion of their right to a speedy trial, weighs most heavily against defendants under the circumstances of this case. Although failure to assert this right does not constitute a waiver of the right to a speedy trial, it is a factor to be considered in the balancing test. In Barker this consideration was expressed thusly:

> "* * * The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. 531.

In our view the record in this case amply demonstrates that the defendants did not really want a speedy trial. They first asserted this right after protracted proceedings resulting in dismissal of 13 of the 19 counts. For 507 days after they were charged, defendants failed to even hint they desired a faster pace in the proceedings. Defendants asked for and received extensions of time. They failed to object to extensions of time granted the state. They delayed for 40 days after the closing of filings for Chief Justice of this Court before seeking Judge Hatfield's removal because of his candidacy for a statewide elective judicial office.

At the time defendants filed their motions for dismissal for lack of a speedy trial, they had not pursued any pretrial discovery and were in no sense ready for trial. Six days after filing their motions for dismissal for lack of a speedy trial, defendants filed, among other things, three pretrial discovery motions and a motion to change the place of trial. Fifteen days after filing their motion for dismissal for lack of a speedy trial, defendant Gloria Eusek Carden sought severance of her trial from that of her husband and codefendant. Under these circumstances defendants' claim of deprivation of a speedy trial loses its vitality. United States v. Churchill, 483 F.2d 268; United States v. Dornau, 356 F.Supp. 1091. The further circumstance that defendants waited until the eve of trial to file their motions illustrates the transparent nature of their claim that they were deprived of their constitutional right to a speedy trial. United States v. Churchill, supra; United States v. Fasanaro, 471 F.2d 717; United States v. Jones, 475 F.2d 322; United States v. Toy, 482 F.2d 741; Day v. State, 61 Wis.2d 236, 212 N.W.2d 489; United States v. Saglimbene, 471 F.2d 16.

The state requests us to review our prior holding in Steward and Sanford on the third factor in the Barker balancing process. The state reads these cases as holding that the filing of a motion to dismiss for lack of a speedy trial by defendant at his arraignment is a sufficient assertion of the right. Steward, unlike this case, involved essentially "dead time" between the filing of charges and arraignment and motion on the eve of trial so to speak; Sanford involved the failure of three different judges to set defendant's motion for hearing over an eight month period despite his repeated requests. Although isolated statements in the opinions may support the state's view of what this Court held, these statements must be read and interpreted in the context of the facts of the case in which they were made. As the United States Supreme Court recently stated:

> "While it is possible to excise various portions of the plurality opinion to support the result reached below, divorcing the language from the facts of the case serves only to distort its holdings."
> Illinois v. Somerville, 410 U.S. 458, 469, 93 S.Ct. 1066, 35 L ed 2d 425, 434.

We view this as particularly true in speedy trial cases where each case must be considered on an ad hoc basis under its particular facts in applying the balancing test of Barker. We intended no elimination of the third factor in the Barker balancing test, but simply held that under the facts and circumstances of those particular cases, defendants had properly asserted their right.

The final factor in the balancing process involves the question of whether defendants were prejudiced by the delay. We need not belabor this point. Both presumptive and actual prejudice are present to some degree in this case.

- 14 -

Barker describes the approach to this factor in this manner:

> "* * * Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." 407 U.S. 532.

Here there is nothing in the record to suggest that the defense has been impaired by the delay. There are no lost or missing witnesses. There is no showing of loss of memory.

There has been no pretrial incarceration, oppressive or otherwise.

There has been substantial anxiety and concern on the part of defendants. This has manifested itself physically, mentally and emotionally. It is perhaps more severe in this case than in the usual case. But this is an unusual case. We do not see how this anxiety and concern can be eliminated or minimized as far as these defendants are concerned until this entire workmen's compensation investigation and prosecution is completely finished.

In summary then, the circumstances of this particular case involve substantial delay resulting primarily from the exercise of statutory procedural rights inherent in Montana's criminal justice system for which neither the state nor the defendants are chargeable; that defendants' assertion of lack of a speedy trial has been belated and transparent, indicating that defendants did not really want a speedy trial and were not yet ready for trial

when they filed their motion; and that prejudice has resulted
to defendants from the delay in the form of anxiety and concern.
On the balance, we hold defendants have not been denied a speedy
trial in the constitutional sense.

The order and judgment of dismissal is reversed. The case
is remanded to the district court for trial.

_____
                    Justice

We Concur:

_____
Justice

_____
Hon. James M. Salansky, District
Judge, sitting for Mr. Justice
John Conway Harrison.

- 16 -

Mr. Justice Gene B. Daly dissenting:

During oral argument the attorney general characterized this as "a political case". It was not made clear what significance was intended. The majority here has scrupulously avoided any reference to the political background of this or related Workmen's Compensation cases but does set the case apart at p. 15 of the opinion with "It is perhaps more severe in this case than in the usual case. But this is an unusual case." (Emphasis supplied).

Appellate judges have said in the past that it is not necessary that a court pretend to be more ignorant than it actually is, nor more ignorant than the public generally. I believe this to be true. The political history and excessive media treatment has not escaped my notice. Be this as it may, I cannot agree that cases should be viewed or treated as political or unusual or whatever. This case is what it is, a single offense $5,000 fraud case, alleged by the state to be a crime. The kind of case where the facts, not names, are important. The kind of case the average county attorney sees frequently and disposes of within several weeks or a month with no problems.

The majority opinion relies almost exclusively on Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L ed 2d 101 (1972), and I do not deny its authority. However, in explaining the application of Barker to the Montana cases of Steward, Sanford and Keller, the majority states at p. 6 "These cases generally involve a sensitive balancing of four principal factors * * *." (Emphasis added.) Again the majority states at p. 9, that "Montana has adopted and applied the four factor balancing test in Barker * * *." (Emphasis added.) Further, that "In this case, the state's rebuttal must be

weighed and considered in the light of the _four factor_ test of _Barker_." (Emphasis added.) Thus it is obvious that the majority over-simplifies the principles of _Barker_. The case is not so narrow and restricted as the majority would lead us to believe. In it, the United States Supreme Court stated:

> "We regard none of the four factors identified above as either a _necessary_ or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors which must be considered together _with such other circumstances as may be relevant_. In sum, _these factors_ have no _talismanic qualities_; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." (Emphasis added.) 407 U.S. 533.

Many cases following _Barker_ have recognized that the principles are not so constricted as the majority assumes. The foregoing quotation was set out and approved in its entirety in Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L ed 2d 183, 185, 186. As stated in United States v. Dreyer, 533 F.2d 112, 115:

> "* * * The Court emphasized that _it did not intend the list to be exhaustive_ nor any one factor dispositive and that _other relevant circumstances should also be considered._" (Emphasis added.)

It is the "other relevant circumstances" set forth above in this opinion, which cannot be ignored for a proper application of _Barker._

The majority opinion purports to give full support to the rejection by _Barker_ of the "demand-waiver doctrine". After doing so, however, the majority goes all the way around the horns of their dilemma and gives actual effect to the "demand-waiver" rule. For this reason, we should look at the United States Supreme Court's statement in connection with the rule in _Barker_:

> "Such an approach, by presuming waiver of a fundamental right from inaction, is inconsistent with this Court's

- 18 -

pronouncements on waiver of constitutional rights. The Court has defined waiver as 'an intentional relinquishment or abandonment of a known right or privilege.' * * * Courts should 'indulge every reasonable presumption against waiver.' * * * and they should 'not presume acquiescence in the loss of fundamental rights.' * * * In Carnley v. Cochran, 369 U.S. 506, 8 L.Ed.2d 70, 82 S.Ct. 884 (1962), we held:

"'Presuming waiver from a silent record is impermissible * * * there must be an allegation and evidence * * *.'" 407 U.S. 525,526.

By, in effect, applying the "demand-waiver rule", the majority does further violence to the law enunciated in Barker:

"The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest." (Emphasis added.) 407 U.S. 527.

The majority opinion at page 7 attempts to support its ultimate conclusion by citing the cases relied on by the state, wherein delays in excess of that Judge Sorte was confronted with were involved. It should be noted the only United States Supreme Court case cited is United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L ed 2d 627, decided February 23, 1966, over 6 years prior to Barker. Since Barker is universally accepted as the Bible on speedy trial issues, and since it has been a foundation for the new federal rules and the decisions drastically reducing permissible delays in bringing a case to trial, any authority of "Ewell" is diluted, and to some extent superseded by Barker. Further, the facts in Ewell are not at all similar to those of the instant case, nor are the facts in the other cases cited by the state and the majority.

It should be noted also that the delay in _Ewell_ was not
"substantially in excess" of that in this case, as stated by the
majority. In this case, the time between the filing of the Informa-
tion and the order of Judge Sorte was 585 days, as compared to 576
in _Ewell._ At any rate, the quotation of the majority from _Ewell_
at page 10 of the majority opinion, is not consonant with the national
trend since 1966. The substance of the quotation is that unless
prosecution is "purposeful or oppressive" in delaying a prosecution,
there is no denial of a speedy trial. This is not the law under the
1972 _Barker_ decision and the cases and rules applied since then. This
has not been the law in Montana, prior to the majority decision
in this case.

The majority opinion makes this charitable statement at p. 13:

"In our view the record in this case amply demonstrates
that the defendants did not really want a speedy trial."
(Emphasis added.)

This is an exceedingly transparent effort to bring this case
within the result of _Barker_, but this case is in no manner or way
similar under the facts of _Barker._ There, Barker was anxiously
awaiting the outcome of trials and appeals in the related case
of Manning, who was charged with the same crime. Barker was gambling
that his case would be dismissed if Manning were eventually acquitted.
The state obtained 16 continuances of trial dates, and Barker made
no objection to 13 of these continuances. He thoroughly approved
of the delays until he lost his bet. There are absolutely no
similar facts in this case.

Moreover, a search of the record fails to disclose any evidence
to support this gratuitous statement of the majority. Likewise, if
there was any issue of fact before Judge Sorte as to whether or not
the Cardens wanted to go to trial, it is not apparent from the record.

Under the established rules of appellate procedure <u>neither an</u>

<u>issue of law nor an issue of fact can be raised for the first</u>

<u>time on appeal</u>. The majority completely by-passes this principle.

The discretion vested in the trial court and the presumptions

in the trial court's favor recognized in <u>Steward</u> seem to have no

meaning in this case. This Court stated in <u>Steward</u>:

> "This Court has held many times that <u>all presumptions</u>
> <u>are in favor of the trial court's decision.</u> [Citing cases.]
> The district court had ample opportunity to view the
> record and determine the inferences to be drawn from the
> actions of the parties. <u>We find no substantial evidence on</u>
> <u>the record rebutting the presumption the district court</u>
> <u>acted properly in holding the actions of defendant and his</u>
> <u>attorney did not waive the right to a speedy trial.</u>"
> (Emphasis added.) 543 P.2d 183.

This Court further recognized the discretion vested in the

trial court in connection with the question of dismissal with

prejudice. In <u>Steward</u>, we said:

> "* * * The State may exercise discretion as to
> whether the accused will be reprosecuted. The trial
> court should possess similar discretion to disallow
> reprosecution if the prejudice caused the accused and
> his defense by the denial of a speedy trial would be
> compounded by a subsequent prosecution for the same
> offense." 543 P.2d 184.

If we continue to recognize the presumption in favor of the

ruling of the trial court there is no basis for reversal on this

record. If the majority bases its holding on manifest abuse or

lack of substantial evidence, it should so state.

The contention that the state has no responsibility for the

time consumed in connection with defendants' 56 motions attacking

the Information creates a bit of a "stench". There is no way or

no case to support any angle the state can use to avoid responsi-

bility for the time attendant to disposing 13 of the 19 counts.

The majority opinion denies that "the initial filing of a 19 count

Information in this case [was] unreasonable" at page 10, but <u>the</u>

<u>state admitted 13 counts were untenable.</u> To say they were improvi-

dently filed would be undeservedly apologetic and charitable.

(See also in this connection: §3.9(c)(e) of Std. for Criminal Justice of American Bar Association and Disciplinary Rules 7-103A and 1-102(A)(4)(5); Montana Cannons of Professional Ethics 3.9 (a)(c)(e).) See also: United States v. Pauline Pipe, (Mont.) Havre-Glasgow Div., Federal District Court CR-77-10-HG, April 1977, for a discussion concerning repeated indictment as denial of due process which doctrine would not exclude application to untenable Information counts.

The majority further condemns the defendants in relation to the number of counts at p. 10 of its opinion, saying "this is largely speculative and unconvincing in light of the 25 motions filed by the defendants attacking the amended Information and the additional discovery motions, venue motion, severance motion, and motion relating to pretrial publicity." This charitable statement seems to assume that all motions should be filed at the outset of the proceedings. After a declaration of "unusual case", I fail to see any justification for the characterization "speculative and unconvincing" to describe motions relating to venue and pretrial publicity prior to the time the grounds had fully accrued, or not filing discovery motions prior to the time when it was determined whether or not the Information would be dismissed.

The majority on p. 9, recognizes that 544 days between filing Information and trial date was sufficient to trigger an inquiry as to speedy trial in the following language:

> "It establishes a prima facie case of denial of a speedy trial. State ex rel. Sanford v. Dist.Ct., supra. If this prima facie case remains unrebutted, the issue is settled." (Emphasis added.)

Having purported to recognize the rule, the majority emasculates it by ignoring that the burden is upon the state to rebut the

the presumption of a denial of a speedy trial and it is the duty of the state to bring the case to trial.

On p. 10 of its opinion, the majority blandly states:

"In our view the state has pursued the prosecution with reasonable diligence."

This statement cannot be justified by the record and particularly the state's belated disqualification of Judge Allen after presiding for 264 days, but, more that that, it sidesteps the issues. The question is not limited to whether the prosecution proceeded with "reasonable diligence" but whether or not the defendants were deprived of a constitutional right. If they were so deprived at the hands of the state, it matters not whether it was the executive, legislative or judicial branch at fault. (In this regard, see admissions by state in Petition for Supervisory Control v. Arnold Olsen (Goldman dismissal), April 26, 1977.)

The majority states at p. 13:

"* * * The further circumstance that defendants waited until the eve of trial to file their motions illustrates the transparent nature of their claim that they were deprived of their constitutional right to a speedy trial." (Emphasis added.)

Let us take a good look at the above statement and then compare it with the unanimous expression of the Court in Steward. It was there said:

"The 'appropriate motion' is a motion to dismiss for denial of a speedy trial. The proper time to assert the right to a speedy trial is prior to the actual commencement of the trial, usually at the time the trial date is set, or the time the case is called to trial. Morse v. Municipal Court, et al., 13 Cal.3d 149, 118 Cal.Rptr. 14, 529 P.2d 46. Defendant, in the instant case, made his motion to dismiss at the proper time." (Emphasis added.) 543 P.2d 182.

We also stated in Steward:

"The district court here was correct in holding:

"' * * * the Defendant's attorney would not be

- 23 -

representing the Defendant if he would raise the question of the fair speedy trial. This was incumbent upon the County Attorney to do so under the circumstances.'" (Emphasis added.) 543 P.2d 182.

Here, the "tentative trial date" was June 17, 1976 and on May 11, 1976 defendants filed their motion to dismiss for lack of a speedy trial. How does this differ from the law announced in Steward?

The majority attempts to circumvent Barker by constant reference to lack of "dead time", pp. 10, 12 and 14 of its opinion, apparently on the theory that if there is no extended interlude without some activity there can be no deprivation of a speedy trial. There is a very conspicuous lack of authority cited for this theory, and the only mention in Barker of "dead time" is in a totally different context. There Justice Powell observed:

"* * * Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time." (Emphasis added.) 407 U.S. 532,533.

Any application of this statement to the instant case is difficult to see or understand.

In passing I must comment that at p. 12 of its opinion the majority takes the position that the state or "society" is left "naked of the means to protect itself in the face of any protracted or spirited defense." In light of the facts of this case, the statement can only be viewed as an apology for incompetence. If nothing else it is a new concept that the state needs protection from individual defendants. Society does have an interest in speedy trials, but it is not adversary. It is in upholding and protecting the integrity of the judicial system against the deficiencies and abuses of its agencies which are in total control of the state government. The defendants and society, rather than arch adversaries, are in a position of parallel interests. It is ludicrous to make the assertion, particularly in what the state has termed an "unusual

case" backed by state appropriation of approximately $1,933,737.00, against a handful of defendants. This imbalance is not a naked society but approaches tyranny.

The thread of misunderstanding runs all through the majority opinon and finally in the summary, p. 15, asserts:

"* * * the circumstances of this particular case involve substantial delay <u>resulting primarily from the exercise of statutory procedural rights inherent in Montana's criminal justice system for which neither the state nor the defendants are chargeable</u> * * *."
(Emphasis added.)

This statement like the rest of the opinion misses the principal point, that this is not a <u>one</u> or <u>single element matter</u>, such as how the prosecution proceeded, that controls. Rather it is the <u>total effect of the system.</u> If the "Montana criminal justice system" is so structured that a relatively simple, single transaction, alleged to be criminal, results in a 544 day delay of trial, then there has been a denial of a speedy trial, and it matters not whether it resulted in action or inaction by the courts, prosecution or legislature, or all in concert, the state is the system and totally responsible for "statutory procedures inherent in Montana's criminal justice system".

Again, the majority persists in ignoring the basic rule of <u>Barker</u>:

"* * * But the rule we announce today, which comports with constitutional principles places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. * * *" 407 U.S. 529.

Again, on the matter of prejudice, I point out to the majority that:

(1) District Judge Sorte in the memorandum supporting his "order and judgment dismissing with prejudice" stated:

"In this State the law is that long delay establishes
a prima-facie case of denial of a speedy trial. This case,
as of July 28, 1976, was 586 days from the date of the
filing of the Information and is presently set for trial
August 16th, 1976, which is 605 days. Sanford (July 8th,
1976) held delay of ten months (299 days) between arraign-
ment and trial establishes a prima-facie case of denial
of the right to a speedy trial. That situation is present
is present here as is the presumption of prejudice (Sanford
v. District Court, 33 State Reporter 644, State v. Steward,
32 St. Reporter 1185 and cases cited. Uncontradicted testi-
mony given by defendants at a hearing held May 17, 1976, in
Great Falls, Montana, clearly establishes prejudice beyond
the presumption. (See Exhibits admitted June 17, 1976.)"

(2) The state has offered no evidence to contradict this
testimony.

(3) The state has the burden to not only produce proof of
no prejudice but overcome the presumption of correctness of Judge
Sorte's judgment.

(4) In State v. Keller, _____Mont._____, 553 P.2d 1013, 1017,
33 St.Rep. 795,798, this Court again stated one of the major purposes
of a speedy trial is to protect the accused in the following language:

"In his concurring opinion in Barker, at page 121, Justice
White emphasizes one of the major purposes in protecting
the accused. Wholly aside from possible prejudice to a
defense on the merits, the accused will be subject to sub-
stantial restrictions on his liberty pending trial, either
in jail or while free on bond, '"* * * that may disrupt his
employment, drain his financial resources, curtail his
associations, subject him to public obloquy, and create
anxiety in him, his family and his friends."' U.S. v. Marion,
404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L ed 2d 468, (1971)."

In United States v. Dreyer, 3 C.C.A. March 1976, 533 F.2d 112,
115, it was stated:

"This reading of Barker, which confines 'prejudice'
to impairment to the defense, was explicitly rejected
by the United States Supreme Court in Moore v. Arizona,
414 U.S. 25, 26-27, 94 S.Ct. 188, 189-190, 38 L.Ed.2d
183, 185-186 (1973) (per curiam). There the Court quoted
approvingly from Justice White's concurring opinion in
Barker v. Wingo, supra, 407 U.S. at 537, 92 S.Ct. at 2195,
33 L.Ed.2d at 121:

"'Inordinate delay "wholly aside from possible pre-
judice to a defense on the merits, may 'seriously interfere

- 26 -

with the defendant's liberty, whether he is free on
bail or not, and * * * may disrupt his employment,
drain his financial resources, curtail his associations,
subject him to public obloquy, and create anxiety in him,
his family and his friends.'" United States v. Marion, 404
U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). These
factors are more serious for some than for others, but they are
inevitably present in every case to some extent, for every
defendant will either be incarcerated pending trial or on
bail subject to substantial restrictions on his liberty.'

"The majority in Barker also recognized that an accused
is 'disadvantaged by restraints on his liberty and by living
under a cloud of anxiety, suspicion, and often hostility.'
Barker v. Wingo, supra, 407 U.S. at 533, 92 S.Ct. at 2193,
33 L.Ed.2d at 118. A proper reading of Barker, therefore,
must include within the meaning of 'prejudice' any threat
to what the Second Circuit recently has termed 'an accused's
significant stakes--psychological, physical and financial---
in the prompt termination of a proceeding which may ulti-
mately deprive him of life, liberty or property.' United
States v. Roberts, 515 F.2d 642, 645 (2d Cir. 1975)."
(Emphasis added.)

(5) Our files do not reveal the defendants are proceeding

forma pauperis, but are using their own assets.

(6) Hence, the prejudice found and within the contemplation

of Barker, Marion and Dreyer and adopted by Montana in Keller,

has not been recognized by the majority beyond "this is an unusual

case".

(7) There has been no burden established by the majority

and no burden met by the state.

(8) The state has disposed of the entire issue of prejudice

summarily and totally ignored the uncontroverted principle that

the burden is upon the state to establish that there has been no

prejudice. The majority in stating "there is nothing in the record
                    (Emphasis added.)
to suggest"/any of these types of prejudice has unwittingly conceded

that the prejudice element must be resolved 100% in favor of de-

fendants. Even if the burden was on the defendants the conclusion

of the majority would be untenable under the authority of Dreyer

and cases cited therein, and Keller.

I would ask the majority in this opinion, what is the state of the law as it has been announced in the many decisions setting forth the doctrine that the judgment of the district court is presumed to be correct and all doubt resolved in favor of the prevailing party on appeal. How are we to view the doctrine established by Steward, Sanford and Keller? Are they still the law, except in "unusual" or "political cases"?

I, for the reasons stated, feel Judge Sorte's judgment should be affirmed.

_____
Justice.

. . . . . . . . . . . .

Hon. L.C. Gulbrandson, District Judge, sitting for Chief Justice Paul G. Hatfield, agrees with the dissent of Mr. Justice Daly, to the extent said dissent imposes responsibility upon the State of Montana for "institutional delays" in the criminal justice system.

_____