UNITED STATES, Appellant,

v.

Joseph A. BOLDEN, Jr., Appellee.

No. 12037.

District of Columbia Court of Appeals.

Argued Oct. 12, 1977.

Decided Dec. 23, 1977.

Mary Ellen Abrecht, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, John C. Martin and Dianne H. Kelly, Asst. U. S. Attys., Washington, D. C., were on brief, for appellant.

Stephen J. O'Brien, Washington, D. C., appointed by this court, for appellee.

Before KERN, YEAGLEY and MACK, Associate Judges.

KERN, Associate Judge:

This is an appeal by the United States pursuant to D.C.Code 1973, § 23–104(c), from an order of the Superior Court dismissing an information filed against appellee for want of a speedy trial. On appeal, the government argues that the facts of this case did not warrant imposition of the drastic remedy of dismissal. We agree and reverse.

On January 27, 1976, appellee was charged in an information with assault, D.C.Code 1973, § 22–504, and possession of a prohibited weapon with the intent to use it unlawfully against another, D.C.Code 1973, § 22–3214(b). At his arraignment, because a felony case was pending against appellee, the instant misdemeanor case was certified to the felony judge pursuant to Super.Ct.Cr.R. 105(b)(2)(ii).[1] A trial date of September 14, 1976 was later established. At the government's request, the trial date was accelerated to July 1976. On July 12, 1976, both parties were present and ready for trial but the court was unable to reach this case. On July 13, 1976, the day the trial would have commenced, appellee and the government agreed upon a disposition of the case and appellee entered a plea of guilty to one count of assault under the doctrine of *North Carolina v. Alford*, 400 U.S. 25, 37–38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Six days after the trial judge accepted this guilty plea, he recused himself on the ground that thirteen years earlier he had served as defense counsel in civil litigation in which appellee had been the plaintiff. The trial judge offered appellee the option of either certifying the case to another judge for sentencing or vacating his guilty plea. Appellee elected to have the guilty plea vacated. The felony charge against appellee was later dismissed and this misdemeanor case was certified to the misdemeanor branch for trial on November 15, 1976. On that date, the government requested a short continuance because a police witness was on annual leave. A seventeen day continuance until December 2, 1976 was granted over defense objection. On December 2, 1976, although both parties were again ready for trial, no judges were available to hear the case and it was continued until February 22, 1977. On February 22, 1977, the government obtained a second continuance until February 28 because of a

death in the complainant's family. At this time, appellee filed a motion to dismiss for lack of a speedy trial. The motion was granted, after oral argument, on February 28, 1977.

■ Although the right to a speedy trial is a fundamental constitutional right, *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), it is impossible to precisely determine when it has been denied. *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Moreover, the right to a speedy trial is a concept more elusive of definition than an accused's other procedural rights.[2] In effect, we are asked to determine how long is constitutionally too long in the context of a particular case.

■ The burden of insuring that criminal cases are promptly tried falls on the government and on the courts. *Barker v. Wingo, supra* at 529, 92 S.Ct. 2182; *Branch v. United States*, D.C.App., 372 A.2d 998, 999–1000 (1977). In determining whether an accused's right to a speedy trial has been infringed, a court applies a four-pronged balancing test which weighs: (1) the length of the delay, (2) the reasons for the delay, (3) the assertion of the right by the defense, and (4) the prejudice to the accused. The application of these factors to a particular complex of facts compels the courts to approach speedy trial cases on an ad hoc basis.

■ Because the remedy for the denial of the accused's right to a speedy trial is dismissal of the indictment, *Strunk v. United States*, 412 U.S. 434, 439–40, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), courts should carefully consider the imposition of this "draconian" remedy:

> [Dismissal] is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such

---

1. Super.Ct.Cr.R. 105(b)(2)(ii) requires:

 Whenever it appears that an information is filed with respect to an accused against whom an indictment is already pending, the judge sitting in the Assignment Section, after conducting the arraignment, shall assign the matter to the judge before whom the indictment is pending.

2. The Supreme Court has characterized the right to a speedy trial as "amorphous" and "slippery." *Barker v. Wingo, supra* at 522, 92 S.Ct. 2182.

a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy. [*Barker v. Wingo, supra,* 407 U.S. at 522, 92 S.Ct. at 2188; footnote omitted.]

The Supreme Court has also cautioned that:

We regard none of the four facts . . as either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a *difficult and sensitive balancing process.* [*Barker v. Wingo, supra* at 533, 92 S.Ct. at 2193; emphasis added.]

With full recognition of the pressures of court business at the trial level, we do not find in this record an exercise by the lower court of that "delicate judgment" and that "sensitive balancing" process which would justify a dismissal with prejudice on speedy trial grounds.[3] *See United States v. Mack,* D.C.App., 298 A.2d 509, 511 (1972). The record indicates the trial court overemphasized the factor of delay without fully weighing the other three speedy trial factors enunciated by *Barker v. Wingo, supra.* As a matter of law, the lower court's failure to fully consider all the relevant factors announced in *Barker v. Wingo, supra,* 407 U.S. at 530, 92 S.Ct. 2182, as the linchpins of a speedy trial analysis constitutes reversible error. *See United States v. Mack, supra* at 511. Moreover, as the following analysis demonstrates, our balancing of the four relevant speedy trial factors indicates that even if the trial court had fully considered every factor, no denial of the accused's right to a speedy trial could have been found on the undisputed facts of this case.

## LENGTH OF THE DELAY

 The length of the delay is, in effect, a triggering mechanism. *Smith v. United States,* D.C.App., 379 A.2d 1166 (No. 10893, 1977). Until the delay becomes, at least, presumptively prejudicial, there is no necessity for further inquiry. *Barker v. Wingo, supra,* 407 U.S. at 530, 92 S.Ct. 2182. The chronology of the instant case reveals a delay of thirteen months. In this jurisdiction, a delay of one year or more between arrest and trial gives prima facie merit to a claim that a deprivation of an accused's speedy trial rights has occurred. *Branch v. United States, supra* at 1000; *United States v. Holt,* 145 U.S.App.D.C. 185, 186, 448 F.2d 1108, 1109, *cert. denied,* 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971); *Hedgepeth v. United States,* 124 U.S.App.D.C. 291, 293, 364 F.2d 684, 686 (1966). After such a delay, prejudice need not be affirmatively shown by the accused, *United States v. Bishton,* 150 U.S.App.D.C. 51, 55, 463 F.2d 887, 891 (1972),[4] and a heavy burden then shifts to the government to justify the delay. *Branch v. United States, supra* at 1000; *Smith v. United States,* 135 U.S.App. D.C. 284, 286–87, 418 F.2d 1120, 1122–23, *cert. denied,* 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969).[5]

 The government argues that the first five months following appellee's arrest cannot be characterized as "delay" at all since this period elapsed due to the operation of Superior Court Rule 105. We disagree. Although this period is an institu-

---

**3.** In *Barker v. Wingo, supra* at 533, 92 S.Ct. 2182, the Supreme Court cited *United States v. Mann,* 291 F.Supp. 268 (S.D.N.Y.1968), as an example of how the speedy trial issue should be approached by the trial court. That opinion gave particularized attention to the specific facts of the case and carefully evaluated the case in light of each of the applicable factors.

**4.** That *Barker v. Wingo* stands for the proposition that no affirmative demonstration of prejudice is necessary to establish a denial of the constitutional right to a speedy trial was recog-

nized in *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).

**5.** The length of delay that can be constitutionally tolerated is influenced by the circumstances of the particular case. The longer the delay and the less complex or serious the case, the more critically the delay should be examined. *Barker v. Wingo, supra,* 407 U.S. at 530–31, 92 S.Ct. 2182; *Branch v. United States, supra* at 1000; *United States v. Holt, supra,* 145 U.S. App.D.C. at 186, 448 F.2d at 1110.

tional delay which the government neither sought nor obtained benefit from, a delay due to the operation of the court system must be ultimately chargeable to the prosecution. *Barker v. Wingo, supra,* 407 U.S. at 529, 92 S.Ct. 2182; *United States v. Jones,* 173 U.S.App.D.C. 280, 295, 524 F.2d 834, 849 (1975). The government also argues that the appellee's decision to vacate his guilty plea ". . . necessarily allowed the clock to be turned back to zero for purposes of timing delay." (Appellant's Brief at 7.) Whatever merit this argument might have in other circumstances, we reject it in the unusual context of this case; consequently, the government must satisfactorily explain the thirteen-month delay between appellee's arrest and dismissal of the indictment.

## REASON FOR THE DELAY

■ In an evaluation of the reasons for delay, different weights should be assigned to different reasons. *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. 2182. The undisputed explanation for at least eleven months of the delay in this case is overcrowded dockets and the operation of Rule 105. Of the remainder of the delay, seventeen days were directly attributable to the government, and a short delay was caused by a death in the complainant's family. While the entire period of delay in this case is chargeable to the government, the bulk of the delay was due to a "neutral reason"; *viz.,* court congestion or institutional delays. *Barker v. Wingo, supra* at 531, 92 S.Ct. 2182; *see Strunk v. United States, supra,* 412 U.S. at 436, 93 S.Ct. 2260; *United States v. Jones,* 154 U.S.App.D.C. 211, 213, 475 F.2d 322, 324 (1972). There is no indication the government has attempted to delay the trial to obtain a tactical advantage or to harass or oppress the defense. *Branch v. United States, supra; United States v. Lara,* 172 U.S.App.D.C. 60, 65, 520 F.2d 460, 465 (1975). The institutional delays which comprise the bulk of the delays in this case are to be weighed less heavily against the government in a speedy trial determination than a deliberate attempt to delay the trial or seek other tactical advantage. *Smith v. United States,* D.C.App., 379 A.2d 1166 (No. 10893, 1977).

## ASSERTION OF RIGHT

■ Although the record does not reflect a single continuance at the instance of appellee, there is also little indication of a strong desire for a speedy trial on the part of the accused.[6] After the December 2, 1976 continuance of his case for two and one-half months, appellee did nothing to demand an immediate trial. In *Barker v. Wingo, supra,* 407 U.S. at 535, 92 S.Ct. 2182, the Supreme Court found significance in the fact the defendant had not made an alternative motion for an immediate trial when he sought a dismissal on speedy trial grounds. On the facts of this case, while it cannot be said appellee failed to assert his right to a speedy trial, the fact appellee did not assert his rights more strenuously weakens the force of this factor in his favor.

## PREJUDICE TO THE DEFENDANT

■ *Barker v. Wingo, supra* at 532, 92 S.Ct. at 2193, identified three interests of the defendant protected by the right to a speedy trial:

(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

Once excessive delay is established, the accused is not required to affirmatively establish prejudice in order to prove a denial of his constitutional right to a speedy trial. *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). However, the uncontested facts of this case demonstrate that the government successfully rebutted the presumption that any prejudice has resulted from excessive delay.

Appellee was not incarcerated after his arraignment except for the six-day period between the entry of his guilty plea and the time it was vacated. No "oppressive pre-

6. Appellee did cooperate in the advancement of his trial date on one occasion.

trial incarceration" can be found on these facts. Because appellee concedes that the thirteen month delay in no way impaired his defense, discussion of this element of "prejudice" is unnecessary.[7]

Although appellee has complained of anxiety and concern stemming from the pendency of this charge, we are convinced this form of prejudice was minimal. An accused could reasonably be expected to suffer less anxiety due to the pendency of a misdemeanor as opposed to a felony charge. Moreover, the anxiety generated by this particular charge was diluted by the pendency of other, more serious, outstanding charges against appellee. *See United States v. Holt, supra,* 145 U.S.App.D.C. at 186, 448 F.2d at 1109. In this case, it is fair to say that appellee suffered anxiety from the felony charge pending for eight of the thirteen months complained of. We are not persuaded that the presence of an additional misdemeanor charge during this eight-month period could have appreciably increased the apprehension and anxiety or community suspicion which appellee was already under due to the felony charge. The anxiety created by the pendency of the misdemeanor charge alone for the five months following the dismissal of the felony charge was minimal. Moreover, the anxiety generated by the misdemeanor charge was further reduced by the fact appellee was not incarcerated pending trial, with the exception of a single six day period. *United States v. Jones,* 173 U.S.App. D.C. at 298, 524 F.2d at 852; consequently, we believe appellee's anxiety and concern were minimal.

## CONCLUSION

In a field where the only permissible remedy is dismissal of an indictment or information, we are unable to find that appellee's right to a speedy trial has been violated on the facts of this case. We believe that no substantial prejudice was suffered by the appellee due to the delay in light of his pretrial release, the nature of the charge and the pendency of a more serious felony charge. The reasons for the delay and the length of the delay, although chargeable to the government, should be weighed lightly because the bulk of the delay was generated by admittedly neutral factors. There is nothing in the record to indicate the government deliberately sought delay. After a weighing of the factors and circumstances surrounding this case, we conclude the government has clearly refuted appellee's prima facie claim of a denial of his right to a speedy trial. Accordingly, the order of the Superior Court is reversed and the case is remanded with instructions that the information be reinstated.

*So ordered.*

---

7. During oral argument, counsel for appellee conceded that the only prejudice present in this case was the anxiety suffered by his client.